WILLIAM BOOTH, Appellee, v. ELLEN McDONALD CADY et al., Appellees; WALLACE ESSINGHAM, Intervenor, Appellant.

No. 42582.

DECEMBER 11, 1934.

REHEARING DENIED APRIL 5, 1935.

W. L. Ryan, for appellant.

C. B. Hextell, for appellee Booth.

STEVENS, J.—The appellee Ellen McDonald Cady and Clift MacKirdy, brother and sister, as heirs at law of their deceased mother, acquired title to certain real property in the city of Des Moines. Clift MacKirdy being of unsound mind, Ellen MacDonald, who subsequently intermarried with Clark H. Cady, was appointed guardian of Clift's property. Upon proper application to the district court of Polk county, the guardian was authorized to sell the property inherited from the mother and to invest the proceeds in the real estate involved in this action. The order directed that title be taken in the name of Ellen McDonald and Ellen McDonald, guardian of Clift MacKirdy. Instead of title being taken to the property involved herein, as ordered and directed by the court, title was taken in the name of Ellen McDonald alone.

On or about January 8, 1926, she and her husband, Clark H. Cady, executed the mortgage in controversy to secure an indebtedness due appellee for groceries and the sum of $100 in addition thereto. Intervenor Essingham is the present guardian of Clift MacKirdy. The plaintiff appellee seeks to have established, and to enforce, a lien upon the property as a whole and without regard to the admitted interest of intervenor's ward therein.

It is the contention of appellant that appellee at the time the mortgage was executed had both actual and constructive notice of the facts imparted by the probate record and, in addition thereto, of the joint possession of the property by the guardian and Clift MacKirdy. It is clear that the record of the deed to Ellen McDonald in the office of the county recorder did not impart constructive notice to appellee of the interest of MacKirdy in the property. It is contended, however, that the probate record kept by the clerk of the district court of the guardianship proceedings complied in all respects with section 11842 of the Code, which is as follows:

"He shall also keep a book which shall be known as the 'probate record,' which shall contain full and complete journal entries of all orders or other proceedings had in probate matters, and where real estate is sold or mortgaged by an executor, administrator, or guardian, under an order of court therefor, a complete record of the same, including the petition, notice, return of service, and all other papers filed, with the orders made, report,

deed of conveyance or mortgage, and order of approval," and that constructive notice was imparted thereby.

The legislature has not seen fit to, in terms, provide that such record shall impart constructive notice of the facts contained therein. The purpose of the recording acts is, of course, familiar to every one. The statute quoted above requires the clerk to keep a complete record where real estate is sold or mortgaged by an executor, administrator, or guardian under an order of court. The statute, as stated, in terms goes no further than we have already indicated. The record thus required to be kept in the office of the clerk of the district court is open to the inspection of all. It necessarily affects the title to real estate in all cases referred to therein. Abstracts of title, when properly compiled, shall show all probate proceedings in any way affecting title. An abstract in this case was exhibited to appellee and his attorney, but it contained no mention of the guardianship. The last entry thereon was of the conveyance to Ellen McDonald. Recording laws exist only when created by statute. The only decision of this court in which a somewhat analogous situation was involved is Miller v. Greenfield Savings Bank, 199 Iowa 1039, 203 N. W. 236, 238. The instrument there considered was a written assignment of a judgment duly filed and made of record in the office of the clerk. We held that: "It is the general rule that it is only in cases where the statutes of a state provide for the recording of a paper that the record thereof becomes constructive." Apparently, the purpose of the statute is to make at once available to the public a record of probate matters directly affecting title to real estate. This statute does not in any way deal with the subject of constructive notice to purchasers of real property. Knowledge on the part of appellee of this statute is, as a matter of law, conclusively presumed, but no such presumption is to be indulged as to the particular tract forming the subject-matter of this transaction. This is true because the statute does not, in terms, provide that constructive notice of the record, which is in fact kept in the clerk's office, shall be imparted thereby. Presumed knowledge of the statute is one thing, but actual or constructive notice of the application thereof to a given tract of real estate is quite another. A prospective purchaser of real estate is not bound at his peril to know the contents of the record kept in the office of the clerk affecting only a particular tract of real estate which may be the subject of a particular transaction. In re Estate of Harsh,

207 Iowa 84, 218 N. W. 537, contains nothing inconsistent with the conclusion reached at this point.

At the time of the execution of the mortgage, Ellen McDonald Cady, guardian, had in her possession a policy of fire insurance in which loss, if any, was made payable to herself individually and herself as guardian. It is claimed by her that this policy of insurance was exhibited to appellee, or his attorney, prior to the execution of the mortgage. It is also claimed by appellant that the attorney for appellee, immediately before the mortgage was signed, indicated that he had knowledge of the true ownership of the property. The evidence is in conflict at this point. The attorney who prepared the note and mortgage and, presumptively, took the acknowledgment, denied emphatically that he had any knowledge of the true ownership of the property, denied the testimony given by Mrs. Cady as to what was said on the occasion, and also that a policy of insurance was exhibited until long afterwards. Appellee denied that he knew of the asserted ownership of Clift MacKirdy or that he had knowledge of any other facts and circumstances touching the interest of the brother in the property.

Both Mrs. Cady and the ward lived in the house involved herein. Clift largely occupied a room in the basement but was generally about the premises without restriction, but confining himself generally to the basement, as stated.

It is the contention of appellant that appellee knew of his residence on the property and that, because thereof, he was charged with notice of his interest therein.

As already stated, there is a sharp conflict in the evidence as to what was said by the parties at the time the mortgage in question was executed. Mrs. Cady testified that the attorney who prepared the papers said to her that "You are guardian of Clift MacKirdy" and that she replied in the affirmative. She also testified that the insurance policy upon the property was delivered to appellee at the time the mortgage was executed. This is denied emphatically by the others present. It would seem quite incredible that a lawyer employed to look after a transaction such as this would, with knowledge of the guardianship and the interests of the ward in the property, have the same signed by Mrs. Cady in her individual capacity only. The abstract referred to by the parties showed title in her alone. The testimony on the part of appellee was that the explanation offered by appellee of the failure to have the abstract brought

down to date was that he desired to save the mortgagor all possible expense. The mortgagor denied that she made the statement attributed to. her that she was the owner of the property or that she asked to be spared the expense of completing the abstract.

The trial court found with appellee at this point on the questions of fact. Although, perhaps, not wholly free from doubt, this court is disposed to follow the judgment of the district court in the matter.

■ Considerable reliance is placed by appellant upon the fact that the ward lived on the premises with the mortgagor. It is the law that possession of real estate is notice to the world of all of the rights therein of the party in possession. Brundson v. Brundson, 199 Iowa 1099, 200 N. W. 823; Oxford Junction Savings Bank v. Hall, 203 Iowa 320, 211 N. W. 389; Ely Savings Bank v. Graham, 201 Iowa 840, 208 N. W. 312.

Such possession must, however, be of a character to indicate that the party in possession has, or asserts, some claim thereto. The mortgagor, with her husband, lived in the property which, as stated, was in her name, and apparently her possession was, with the exception of the fact that her brother resided in the basement, exclusive.

The brother asserted no claim whatever to the property, did not pay the taxes, occupied a portion only of the house, and, so far as the record shows, never at any time asserted an interest in the property. At most, he resided there as an unmarried man without asserting any dominion or control over the property. Appellee testified that he was not acquainted with Clift; that he did not know who he was; that he was under guardianship or his relationship to Mrs. Cady. Nothing, therefore, is shown in the record as was calculated to impart notice that he was in possession under claim of ownership, partial or otherwise. Elliot v. Lane, 82 Iowa 484, 48 N. W. 720, 31 Am. St. Rep. 504; Lindley v. Martindale, 78 Iowa 379, 43 N. W. 233; Iowa Loan & Trust Co. v. King, 58 Iowa 598, 12 N. W. 595; Ferguson v. White, 213 Iowa 1053, 240 N. W. 700; Burmeister v. Walz, 216 Iowa 265, 249 N. W. 197.

Upon the record as a whole, we conclude that at the time the mortgage was executed appellee was without notice, actual or constructive, of the interest of intervenor's ward in the property. It follows that the judgment and decree is affirmed.—Affirmed.

KINDIG, ANDERSON, DONEGAN, EVANS, and ALBERT, JJ., concur.